UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CARROLL WATSON,<br><br>               Plaintiff,<br><br>v.<br><br>PROVIDENCE ST. PETER HOSPITAL, et al.,<br><br>               Defendants. | CASE NO. C12-5352 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REQUIRING DEFENDANT TO SHOW CAUSE |

This matter comes before the Court on Defendant Providence St. Peter Hospital's ("Providence") motion for summary judgment. Dkt. 32. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file. For the reasons stated herein, the Court grants in part and denies in part the motion and orders Providence to show cause why the Court should not decline to exercise jurisdiction over the remaining state law claims.

**I. PROCEDURAL HISTORY**

On March 23, 2012, Watson filed a complaint in the Superior Court of the State of Washington in and for Thurston County against Providence St. Peter Hospital, Jacqueline

ORDER - 1

Imori, Mary E. Mertens, Susan Meenk, Janet Sanders, Tonja Nichols, and John and Jane Does 1-25, who are employees, administrators, or managerial and supervisorial staff of Providence (hereinafter "Defendants"). Dkt. 16-2 at 2-3. On April 23, 2012, Defendants filed a notice of removal to this Court. Dkt. 1. On April 30, 2012, Defendants filed an answer to Watson's complaint. Dkt. 14.

On May 5, 2012, Watson filed a motion to remove the action back to state court. Dkt. 15. On May 14, 2012, Defendants filed a response in opposition to Watson's motion to remand. Dkt. 20. On May 18, 2012, Watson filed a reply. Dkt. 23.

On July 17, 2012, the Court denied Watson's motion to remand finding that three of Watson's eight claims were pre-empted by the Labor Management Relations Act ("LMRA"), 28 U.S.C. §185(a), § 301, giving the Court federal jurisdiction over those claims and supplemental jurisdiction over the remaining state law claims, which are so related to the ones over which the Court has original jurisdiction that they form a part of the same case or controversy sufficient for the Court to retain supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Dkt. 24. Specifically, the Court found that three claims "directly involve breach of contract allegations and require interpretation of the CBA:" (1) Watson's wrongful discharge/termination claim, (2) her breach of contract for unreasonable denial of medical coverage and time off, and (3) her bad faith claim based on allegations that Providence failed to protect her interest by denying her medical

coverage and time off. *Id*. at 6. The remaining state law claims (4-8)[1] are based on violations of state laws and codes regarding meal and rest periods: (4) negligence for failure to properly provide rest and lunch breaks and for failure to train and supervise their employees in the law concerning rest and lunch breaks; (5) vicarious liability based on individual employees' negligent failure to allow Watson any rest or lunch breaks; (6) negligent supervision for failure to properly train and supervise employees in accordance with the law concerning rest and lunch breaks; (7) negligent infliction of emotional distress for failure to provide rest and lunch breaks and for failure to train or supervise employees in the law regarding the same; (8) willful violation of state laws concerning rest and lunch breaks. Dkt. 1 at 14-19 and 21-25.

On May 10, 2013, the Court issued a stipulation and order by the parties dismissing Defendants Mary E. Mertens and Susan Meenk with prejudice. Dkt. 30. On June 6, 2013, the Court issued another stipulation and order by the parties dismissing Defendants Jacqueline Steele (formerly Imori), Janet Sanders, and Tonja Nichols with prejudice. Dkt. 38. Thus, the only remaining Defendants in this action are Providence and Does 1-25.

On June 5, 2013, Providence filed a motion for summary judgment, seeking dismissal of all of Watson's claims. Dkt. 32. On June 24, 2013, Watson filed a brief in

---

[1] The numbering of these claims as set forth here does not coincide with the numbering of the claims in Watson's complaint. For the purposes of organizing this order, the Court has divided the claims into two categories, federal and state, respectively.

opposition to Providence's motion. Dkt. 39. On June 28, 2013, Providence filed a reply. Dkt. 45.

## II. FACTUAL BACKGROUND

Providence hired Watson as a certified nurse assistant ("CNA") and Unit Clerk Trainee in 1988. Dkt. 36-1. She later worked as a unit secretary and health unit coordinator ("HUC") before voluntarily retiring in 2009. Dkt. 36 at 2. Her duties as an HUC included providing clerical and administrative support, processing patient orders and providing patient chart maintenance. Dkt. 36-1 at 2-3 (HUC Job Description).

Ms. Watson was in the bargaining unit covered by a collective bargaining agreement ("CBA") between Providence and SEIU Healthcare 1199NW (the "Union"). *See* Dkts. 35 at 1 (Kathryn Rosen Declaration) and 35-1 at 2-41 (2006-2009 CBA). Ms. Watson served as a shop steward and a representative of the bargaining team that negotiated the 2006 CBA. Dkt. 35-1 at 46 and 47 (Watson's Deposition).

The CBA establishes the terms and conditions of Watson's employment at Providence. For example, the CBA covers discipline and discharge, Article 5; hours of work, including meal and rest breaks, Article 7; compensation, Article 8; sick leave, annual leave and leave of absences, Articles 9, 10, and 12, respectively; health benefits, Article 11; and the grievance procedure, Article 15. *See* Dkt. 35-1 at 2-41 (2006-2009 CBA).

During the course of Watson's employment in 2008 and 2009, she alleges Providence denied her meal and rest breaks in violation of state law. *See* Dkt. 1. On one particular occasion in 2009, Watson maintains that a denial of a rest break by the charge

nurse resulted in her sitting in her own human waste for at least five hours, while she waited for the charge nurse to relieve her from her job. Dkts. 1 at 15, 16, 17, 18 and 22 & 39 at 2-4. Additionally, Watson maintains that her 2009 retirement (Dkt. 36-1 at 7) was really a constructive discharge either in breach of her employment contract or in violation of public policy for use of leave or denial of leave under the Washington Family Care Act ("WFCA"). Dkt. 1 at 19-20 & 39 at 13-15.

## III. DISCUSSION

With regard to Watson's federal claims, the Court concludes that Watson failed to exhaust her remedies under the CBA by not utilizing the grievance procedure set forth therein. Additionally, Watson left (retired or was constructively discharged from) Providence in September 2009, but she did not file her complaint until 2012, nearly thirty months later. Because this is well beyond the six-month statute of limitation under § 301, her federal claims are also time-barred.

As to her state law claims, the Court has retained them by exercising supplemental jurisdiction under 28 U.S.C. §1367(a). Dkt. 24 at 7-8. However, because it is now granting summary judgment as to Watson's federal claims, the Court in its discretion may choose not to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Application of the Standard**

    **1.    LMRA Preemption**

Section 301 of the LMRA confers federal-court jurisdiction over disputes involving collective bargaining agreements. *See* 29 U.S.C. § 185(a). Under well-settled principles of federal labor law, claims preempted by § 301 must ordinarily be dismissed when (1) a plaintiff fails to adequately grieve her complaint in accordance with the terms of the CBA, or (2) the claim is barred by an application of § 301's six-month limitations period. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220-21 (1985). The six-month period begins when the plaintiff "knew or should have known" about the alleged unfair practice, and tolls when the complaint was filed or served. *See Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1261 (C.D. Cal. 2000).

        **a.    Breach of Contract**

As the Court has already determined, Watson's breach of contract claim is subject to LMRA preemption. Dkt. 24 at 6. Watson's breach of contract claim involves allegations that during her employment with Providence, it breached the CBA by unreasonably denying her medical coverage and time off and terminating her, which "were covered pursuant to the terms and conditions of the employment contract" between her and Providence. Dkt. 1 at 21. The only employment contract at issue in this case is the CBA, and time off is covered at least by sick leave, annual leave and leave of

absences, Articles 9, 10, and 12, respectively; and health benefits are covered by Article 11. *See* Dkt. 35-1 at 2-41.  Had Watson wanted to pursue a claim against Providence for breach of the CBA, as a union member, steward and CBA negotiator, she should have followed the grievance process set forth in the CBA; otherwise, she should have known that her claim for breach of the CBA would be barred by § 301's six-month statute of limitations. Watson has failed to exhaust the remedies under the CBA, and this claim is barred by § 301's statute of limitations.  Summary judgment is granted as to this claim.

    **b.**  **Bad Faith**

Again, as the Court has already determined, Watson's claim for bad faith is subject to LRMA preemption.   Dkt. 24 at 6.  Watson's bad faith claim involves allegations that Providence failed to protect Watson's interests by denying her medical coverage and time off.  Dkt. 1 at 20.  Watson's health benefits and leave are governed by Watson's employment contract, the CBA.  *See supra.*  As the Court stated with respect to Watson's breach of contract claim, had she wished to pursue a claim against Providence for bad faith denial of her benefits or leave, as a union member, steward and CBA negotiator, Watson should have followed the grievance process set forth in the CBA; otherwise, she should have known that her claim for breach of the CBA would be barred by § 301's six-month statute of limitations.  Watson has failed to exhaust the remedies under the CBA, and this claim is barred by § 301's statute of limitations. Summary judgment is granted as to this claim.

### c. Wrongful Termination

In her complaint, Watson explicitly alleges that her wrongful termination is based on Providence's "breach [of] their employment contract." Again, as noted above, the only employment contract in this case is the CBA. Dkt. 1 at 19. To the extent that Watson maintains that her constructive discharge was based on a breach of her employment contract, the CBA, her wrongful termination claim is preempted by the LRMA. Thus, as it did with respect to the two foregoing claims, the Court must also conclude that for Watson's wrongful discharge claim based on a CBA breach, Watson was required to follow the grievance process set forth in the CBA. Otherwise, Watson should have known that her claim for breach of the CBA would be barred by § 301's six-month statute of limitations. Watson has failed to exhaust the remedies under the CBA, and this claim is barred by § 301's statute of limitations.

In the alternative, Watson pled that she was constructively discharged in violation of public policy because defendants violated "state and common law." Dkt. 1 at 19. In Watson's response to Providence's motion for summary judgment, her argument opposing dismissal of her wrongful discharge claim focuses largely on the allegation that Providence terminated her for exercising rights under WFCA, RCW 49.12.265, et seq. Dkt. 39 at 13-15. Although this claim appears to be based completely on state law, the WFCA defines "sick leave or other paid time off" by reference to substantive leave guaranteed in other sources, specifically: "time allowed under the terms and appropriate state law, collective bargaining agreement, or employer policy, as applicable, to an employee for illness, vacation, and personal holiday." RCW 49.12.265(5). Therefore,

like the claims above, interpretation of the terms of the CBA's leave provisions would be necessary to determine if a violation of WFCA occurred, as Watson identifies no other specific source which would have entitled her to leave.

Finally, under the plain language of the WFCA, an employee may take time off to care for certain sick family members but not themselves (*see* RCW 49.12.270)[2], and thus Watson could not maintain a claim for wrongful discharge on this basis because the time for which she took leave or was allegedly denied leave was for herself (Dkt. 39 at 14).

**2.  Jurisdiction**

To the extent that Watson's remaining claims depend upon an analysis of the CBA, those claims would, as Providence maintains, be preempted by the LRMA and barred by the six-month statute of limitations as set forth above.

However, the Court finds the remainder of Watson's claims are based on alleged violations of state law[3] and are not "substantially dependent" on an analysis of the CBA.

---

[2] [A]n employer shall allow an employee to use any or all of the employee's choice of sick leave or other paid time off to care for:
   (a) A child of the employee with a health condition that requires treatment or supervision; or
   (b) a spouse, parent, parent-in-law, or grandparent of the employee who has a serious health condition or an emergency condition.
RCW 49.12.270.

[3] Watson also includes within some of these claims allegations that she was subject to "a pervasive atmosphere which perpetuated mistreatment" of her. Dkt. 1 at 15, 16, and 17. However, the Court finds that Providence's motion for summary judgment does not provide persuasive argument that there is any legal basis in federal law on which negligence causes of action based on an independent claim for "mistreatment," if that is what Watson has alleged, should survive summary judgment. In the absence of allegations, for example, of violation of the federal laws against discrimination in the workplace, the Court concludes it has no jurisdiction

1 *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059-1060 (9th Cir. 2007). Therefore, the

2 claims are neither subject to CBA's requirements to grieve disputes nor to § 301 six-

3 month statute of limitations. *Id*.

4       The remaining claims are state law claims, grounded in Washington statutes and

5 codes regarding meal and rest periods. In Watson's complaint, she alleges negligence,

6 negligence supervision, vicarious liability, negligent infliction of emotional distress and

7 state statutory and code violations of meal and rest periods. Dkt. 1 at 14-19 and 21-24.

8 Each cause of action is based on allegations involving denial of rest and meal periods

9 under state law. *See, e.g.*, *id.* at 18 and 21-22 (*citing* WAC 296-126-092).[4]

---

over Watson's "mistreatment" claim. Therefore, unless this Court retains jurisdiction over remaining claims, it will not address Watson's negligence claims based on "mistreatment."

[4] WAC 296-126-092 Meal periods - Rest periods.
(1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.
(2) No employee shall be required to work more than five consecutive hours without a meal period.
(3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.
(4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.
(5) Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required.

ORDER - 11

1       Providence is correct that Washington law sets the floor, not the ceiling, for meal

2 breaks and rest periods and thus the CBA can grant more rights but not less. Dkt. 32 at

3 10; *Wingert v. Yellow Freight Systems, Inc.*, 146 Wn. 2d 841, 852 (2002). However,

4 Providence is incorrect that the CBA therefore governs all allegations involving meal

5 breaks and rest periods simply because the CBA provides an additional five minutes for

6 rest breaks than Washington law requires and provides employees meal breaks after four

7 hours instead of the five hours that Washington law requires. *See* Dkt. 32 at 10. *Yellow*

8 *Freight* does not support Providence's position that Watson's remaining claims are

9 preempted by §301 because, in that case, the Washington State Supreme Court found that

10 federal preemption under the LMRA was raised for the first time on appeal and refused to

11 consider argument on it. 146 Wn. 2d at 853-54.

12       Watson's complaint involves allegations that Providence denied her the minimum

13 standards set forth in Washington law for meal breaks and rest periods, thus, as discussed

14 above, she complains of statutory and code violations. *See* Dkt. 35-1 at 51-52 (Watson

15 Deposition) (Watson testified that she was denied entire lunch breaks 50% percent of the

16 time during the time period relevant to this suit and that she was deprived entirely of 25%

17 of her rest breaks during the same period). The Court does not find Watson's complaint

18 or deposition testimony to allege that Watson failed to receive the extra five minutes of

19 rest guaranteed by the CBA or that she failed to receive a lunch break within four hours

20 of work as the CBA guarantees, instead of within the five hours required by state law.

21 According to her complaint as well as her deposition testimony, Watson's allegations are

22

based on state law and the fact that she did not receive the requisite state law meal and rest breaks, 50% or 25%, respectively, for the period of time at issue. *See supra.*

Washington state statutes or regulatory measures are minimum, non-negotiable rights that exist independently of the CBA. That the CBA includes terms entitling employees to additional time or an earlier meal period is of no import for the purpose of Watson's ability to pursue claims for meal and rest breaks under state law. In *Lingle Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-410 (1988), the Supreme Court addressed this issue:

> In other words, even if dispute resolution pursuant to a [CBA], on one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes.

As such, it is irrelevant that the CBA provides for similar claims under its own terms because the state law claims regarding minimum meal periods and rest breaks can be resolved without interpreting the CBA. Providence does not cite any on-point, binding authority establishing that the existence of the CBA in this case prohibits Watson from pursuing her rights under state law in state court. Accordingly, § 301 does not preempt Watson's state law claims.

Pursuant to 28 U.S.C. 1367(c)(2), district courts may decline to exercise supplemental jurisdiction over a claim under this subsection, if "the district court has dismissed all claims over which it has original jurisdiction." Therefore, based on this Court's order, Providence is ordered to show cause why the Court should not decline to exercise jurisdiction over the remaining claims. Either party may show cause on or

1 before July 22, 2013, if any it may have, as to why the Court should not remand all

2 remaining state claims to Thurston County Superior Court.

3 **IV. ORDER**

4 Therefore, it is hereby **ORDERED** that Providence's motion for summary

5 judgment is **GRANTED in part** as to the federal claims and **DENIED in part** as to the

6 state claims identified.  Additionally, Providence is ordered to show cause why the Court

7 should not decline to exercise jurisdiction and remand this case to state court.

8 Dated this 17th day of July, 2013.

BENJAMIN H. SETTLE
United States District Judge